UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TONY APONTE,

                Plaintiff,

     v.

BRIDGES TO CHANGE,

                Defendant.

Case No. 3:24-cv-00063-AR

**FINDINGS AND RECOMMENDATION**

_____

**ARMISTEAD, United States Magistrate Judge**

Plaintiff Tony Aponte, representing himself, sues his former employer defendant Bridges to Change (BTC), contending that it knew he had disabling back pain, refused to offer accommodations, and fired him when he missed work due to his back pain. Those actions, Aponte alleges, violate the Americans with Disabilities Act (ADA) and the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. § 12101. Before the court are the parties' cross-motions for summary judgment. As explained below, because there are genuine issues of material fact, both motions should be denied.

**BACKGROUND**

The relevant events happened in 2022. Aponte worked for Bridges to Change as a curriculum developer and trainer for five weeks—August 15 to September 22. (Pl.'s MSJ at 7,

ECF 41.) At first, the position could be performed remotely. On his first day, Aponte's supervisor, Katelyn Bessette, asked him to provide his ideal work schedule. Aponte responded that he liked working in the middle of the night, and that the first week he planned to work Tuesday from 12 a.m. to 4 a.m. and 8 a.m. to 12 p.m., and Wednesday from 3 a.m. to 10 a.m. (Crabtree Decl. (attaching Aponte Dep. 93:2-5), ECF 40-1 at 11; Crabtree Decl., ECF 40-1 at 26.) On his first or second day, he disclosed to Bessette that he has intermittent back issues, including spinal stenosis and degenerative disc disease. (Aponte Dep. 97:4-8, ECF 40-1 at 13; Crabtree Decl., ECF 40-1 at 29.)

On August 16, his second day of employment with BTC, Aponte missed a 10 a.m. telephone meeting with Bessette. (Crabtree Decl. 40-1 at 25, 28-29.) Aponte did not respond to Bessette's text at 10:05 a.m. or morning Teams message. Bessette emailed Aponte at 2:26 p.m. inquiring about the missed meeting. Aponte responded that he laid down "for a minute due to my back issues . . . and unintentionally fell asleep until 10:45," that he did not reach out sooner because he knew Bessette was busy with other meetings, and so he completed some online training. Bessette responded that she "can appreciate the need to take care of yourself" and hoped that his back was feeling better. She then instructed Aponte to work onsite for the rest of the week to "have a reset on how to navigate flexible, hybrid work schedules." (*Id.* at 28-29.) Aponte responded that he would report to the office Wednesday and Thursday, and that he needed help with setting up alarms and alerts on his phone and computer. He further explained that his back conditions are "degenerative and will get worse over time" and that he does a significant amount of work "laying prone in bed with my computer in front of me" to temporarily reduce strain on his back. (*Id.* at 28.)

Page 2 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

When Aponte worked in the office on August 17, he modified his workstation by "laying on the floor and doing work with the laptop up by [his] head." (Aponte Dep. 97:9-14, ECF 40-1 at 13.) According to Aponte, Bessette said that she would relay the information about his back to Mallory Jones and Jordan Tyr, BTC's human resource personnel, who would reach out, but they never did. (Aponte Dep. 98:1-6, ECF 40-1 at 14.) Aponte did not ask Bessette for accommodation at that time. (Aponte Dep. 98:20–99:3, ECF 40-1 at 14-15.) In an August 19 email, Bessette reminded Aponte that at least four of his working hours need to be during normal business hours to enable collaboration with other team members. She further stated that "[i]f you need reasonable accommodation, please reach out to our HR director" and provided Tyr's email address. (Crabtree Decl., ECF 40-1 at 31.)

For his position at BTC, Aponte was required to attend a two-week "Peer Wellness Specialist" (PWS) training course offered by the Mental Health & Addiction Association of Oregon (MHAAO). (Tyr Decl. ¶ 6.) On August 30, Aponte did not attend training on suicide prevention and crisis intervention so that he could spend time with his son who was experiencing suicidal ideation. Although Aponte received permission from the MHAAO trainer, he did not obtain Bessette's approval. (Pl.'s MSJ, ECF 42 at 183 (letter from Emily Nelson describing conversation with Aponte); Crabtree Decl., ECF 40-1 at 34.) Bessette also advised Aponte that employees generally are not eligible for time off in their first 90 days of employment, but that his situation seemed like extenuating circumstances. (Crabtree Decl., ECF 40-1 at 34.)

On September 20, Bessette gave Aponte feedback on the training materials he created through a PWS Training Progress Evaluation. In that evaluation, Bessette scored Aponte with mostly fours and fives on a five-point scale. (Pl.'s MSJ, ECF 43 at 106-07.)

Page 3 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

On September 21, at 7:13 a.m., Aponte emailed Bessette, copying Jones, stating that he would not be at work that day because his "back was in great pain." (Crabtree Decl., ECF 40-1 at 25.) Bessette responded, thanking him for letting her know and that she was sorry that his back was in pain. (*Id.* at 39.)

Also that day, Monta Knudson, BTC's then-Executive Director, attended a leadership team meeting with Portland Homeless Family Solutions (PHFS) to discuss joint plans to provide community resources. PHFS's Executive Director Brandi Tuck informed Knudson that Aponte also was employed at PHFS, working a full-time nightshift from 10 p.m. to 7:30 a.m. Saturdays through Tuesdays. Knudson was aware of Aponte's missed meeting and unresponsiveness with Bessette on August 16 and relayed the information he received from Tuck to Tyr after the leadership meeting concluded. (Knudson Decl., ECF 38 at 2.) Tyr then discussed Aponte with Bessette, who requested Aponte's employment termination, and Tyr concurred. (Tyr Decl., ECF 39 at 3.)

When Aponte returned to work on September 22, he was told that he was terminated for attendance concerns. (Aponte Dep. 132:23–33:10, ECF 40-1 at 23-24.) Aponte's notice of termination identified three reasons: attendance concerns including significant periods of unresponsiveness, significant performance concerns, and confirmation of alternative full-time employment, interfering with efficient performance. (Tyr Decl., ECF 39-3.)

## LEGAL STANDARDS

A party is entitled to summary judgment under Rule 56 "only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law."

Page 4 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

*Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)); FED. R. CIV. P. 56(a). An issue is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment involves burden shifting. Defendant BTC, as the moving party without the ultimate burden of persuasion at trial, has "both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry that burden, BTC "must persuade the court that there is no genuine issue of material fact." *Id.* If defendants carry their burden of production, Aponte, as the non-moving party, must produce evidence to support his claims, *id.* at 1103, and must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *F.T.C. v. Stefanchik,* 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."). If Aponte fails to make this showing, then defendants are entitled to summary judgment. *Nissan Fire & Marine*, 210 F.3d at 1103.

Where cross-motions for summary judgment have been filed, the court applies the same standard; that is, each motion is considered on its merits. *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019). The court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

Even though Aponte is self-represented, and the court therefore construes his *pro se* filings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), he is nevertheless held to the same standards in responding to a motion for summary judgment and "should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

## DISCUSSION

### A.    *BTC's Motion for Summary Judgment*

Aponte's claims are premised on two theories: (1) disability discrimination (disparate treatment) and (2) failure to accommodate.[1] *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (holding the "ADA treats the failure to provide a reasonable accommodation as an act of discrimination"); 42 U.S.C. § 12112(b)(5)(A) (providing that discriminating against a qualified individual "on the basis of disability" includes not making reasonable accommodations). The ADAAA amended the ADA and broadened protections. *See generally Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1222-26, (9th Cir. 2022) (explaining that ADAAA clarified that an impairment does not need to be permanent to qualify as disability).

BTC argues that Aponte's discrimination claim fails as a matter of law because he was not performing to expectations and BTC terminated Aponte for legitimate, nondiscriminatory reasons: attendance issues and that Aponte's second full-time, overnight job interfered with his

---

[1]    According to Aponte, BTC should have understood that calling out for back pain was a request for accommodation. (Pl.'s MSJ, ECF 42 at 7-10.) To the extent that those allegations could be construed as a disability retaliation claim, they are conclusory. Aponte does not provide any other factual details to support a retaliation claim. Nevertheless, the court has considered those facts when evaluating Aponte's disability discrimination and failure to accommodate claims.

employment. (BTC MSJ, ECF 37 at 11.) Also argued by BTC is that summary judgment is appropriate on the failure to accommodate claim because he did not request an accommodation before he was terminated. Aponte contends that he has created genuine issues of fact on both claims.

Absent direct proof of discrimination, Aponte's claims under the ADA are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). Under that framework, a plaintiff challenging an adverse employment action has the initial burden of establishing a *prima facie* case of discrimination, and then the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "If the employer does so, then the burden shifts back to the employee to prove that the reason given by the employer was pretextual." *Id.* Because Aponte's two claims differ slightly analytically, the court addresses them separately.

### 1.    disability discrimination

To establish his *prima facie* case, Aponte must show: (1) he is a disabled person under the ADA or ADAAA; (2) he is qualified (that is, able to perform the essential functions of the job with or without reasonable accommodation); and (3) he experienced an adverse employment action because of his disability. *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018); *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). To establish his discrimination claim here, Aponte "must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106-07 (9th Cir. 2019). Aponte

Page 7 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

contends that he has cervical spinal stenosis and degenerative disc disease that cause him intermittent back pain. (Pl.'s Resp., ECF 46 at 8.)

BTC does not dispute that Aponte has a disability. Instead, BTC asserts that Aponte was not "qualified," meaning that Aponte was not performing to BTC's legitimate expectations. (BTC MSJ, ECF 37 at 11.) It argues that Aponte missed a scheduled telephone meeting on his second day, missed a mandatory training session, and had three absences in five weeks, and thus did not meet its performance expectations. (BTC MSJ, ECF 37 at 10-11.) In contrast, Aponte identifies a September 20 "PWS Training Progress Evaluation," in which Bessette provides feedback about the training materials he submitted for her review. In that evaluation, Bessette rated Aponte's work with mostly fours and fives on a five-point scale. (Pl.'s Resp., ECF 46 at 5 (citing ECF 42 at 106-07).) Given the low evidentiary hurdle necessary to satisfy a *prima facie* case, the court concludes that Aponte has satisfied his initial *prima facie* burden here. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010) (describing *prima facie* evidentiary burden as "not onerous" and "much less at the *prima facie* stage than at the pretext stage"); *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (holding the *prima facie* evidentiary burden on summary judgment "is minimal").

The court now considers whether BTC has satisfied its burden of articulating "a legitimate, nondiscriminatory reason" for Aponte's termination. It has. BTC explains that it terminated Aponte for attendance issues and for maintaining a second job that interfered with his work for BTC. *See Snead v. Metro. Prop. & Cas. Ins.*, 237 F.3d 1080, 1093 & n.11 (9th Cir. 2001) (employer's reduction in force was legitimate, nondiscriminatory basis for termination); *Opara v. Yellen*, 57 F.4th 709, 723 (9th Cir. 2023) (discussing that employer's burden "is one of

production, not persuasion and involves no credibility assessment" (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citation modified).)

BTC identifies evidence showing that Aponte missed a 10 a.m. meeting with Bessette on his second day of employment. Four hours after the missed meeting, Aponte reported that he laid down due to his back issues and "unintentionally fell asleep." (Aponte Dep. 93:2-5, ECF 40-1 at 28-29.) The next week, Aponte missed a mandatory training course for personal reasons and failed to notify Bessette in compliance with BTC policy. (Crabtree Decl., ECF 40-1 at 32.) Finally, BTC learned on September 21 that Aponte was working a full-time night shift for PHFS. (Knudson Decl. ¶¶ 2-5, ECF 38.) Based on attendance concerns, BTC concluded that Aponte's employment with PHFS was interfering with his duties for BTC and terminated him. (Tyr Decl. ¶ 8, ECF 39.) Because BTC has provided legitimate, nondiscriminatory reasons for terminating Aponte, the burden returns to Aponte who must raise a genuine issue of material fact that BTC's reasons are pretextual. *Curley*, 772 F.3d at 632; *Snead*, 237 F.3d at 1093.

Aponte can establish BTC's reasons are pretextual in two ways: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang,* 225 F.3d at 1127 (citation modified). "[A] combination of the two types of evidence" also may be used to show pretext. *Id.* The plaintiff retains the ultimate burden of persuasion that "an employer's contested action was due in part or in whole to discriminatory intent." *Opara*, 57 F.4th at 724 (citation modified) (discussing pretext under *McDonnell Douglas*). Although the level of proof necessary to create a

genuine issue of fact to defeat summary judgment is minimal, "the plaintiff must still produce evidence, not just pleadings or argument. *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1004 (9th Cir. 2019).

Aponte identifies no direct evidence of a discriminatory motive. (Aponte Dep., 14:15:58-14:15:45, ECF 40-1 at 21 ("Q. Did Ms. Bessette ever make any disparaging comments about your back condition? A. No. Q. Or the fact that you had a disability? A. No.").) Thus, to survive BTC's motion here, Aponte must identify circumstantial evidence showing that BTC's reasons for terminating him are inconsistent or unbelievable. *Curley*, 772 F.3d at 632. "When assessing the validity of an employer's stated reason for its actions, the key is not whether the reason is 'objectively false' or 'baseless' but whether the employer 'honestly believed its reasons for its actions.'" *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)).

Aponte argues that BTC has offered different reasons for his termination, and that its shifting rationale is unworthy of credence. According to Aponte, BTC said that he was terminated for three reasons: (1) general performance, (2) discovery of an undisclosed second job, and (3) absences during his probationary period. (Pl.'s MSJ, ECF 42 at 35; Pl.'s Resp., ECF 46 at 4-5.) Viewing the evidence in the light most favorable to Aponte, issues of fact exist about BTC's stated rationales.

As for performance issues, when responding to Aponte's interrogatories, BTC stated that "Aponte's work quality and completeness were not factors forming the basis for [BTC's] termination decision." (Pl.'s MSJ, ECF 42 at 168.) As above, Bessette's evaluation of Aponte's draft training materials was mostly positive, rating him with mostly fours on a five-point scale.

(Pl.'s Resp., ECF 46 at 5 (citing ECF 42 at 106-07).) Thus, BTC appears to have disavowed Aponte's performance as a basis for his termination.

Next, Aponte argues that he "never kept his second job a secret" and that BTC knew that he was working for PHFS when he was hired because his onboarding paperwork showed that he remained employed by PHFS. (*See* Pl.'s Resp., ECF 46 at 4; Pl.'s MSJ, ECF 42 at 68 (stating "n/a" for not applicable as the reason for leaving his former employer, and identifying PHFS as current employer). The document identified by Aponte, however, is his job "application information," not onboarding paperwork. (Pl.'s MSJ, ECF 42 at 67-70.) The court cannot infer from his *application information* for the full-time training coordinator position that it would be obvious to BTC that Aponte would remain employed by PHFS. Nevertheless, Aponte contends that he may have mentioned his employment at PHFS during his interview, and that "he absolutely mentioned his working at PHFS shortly after he was hired." Based on that information, Aponte contends that "BTC was aware from the start that he had a second job." (Pl.'s Resp., ECF 46 at 6.) According to Aponte, "[t]here is no evidence that [his] job at PHFS had any impact on his work for BTC" and that "his second job was not a valid reason for his termination." (*Id.* at 5, 18.)

Aponte also takes issue with BTC's characterization of his absences. (*Id.* at 5, 23.) Although Aponte admits that he missed a 10 a.m. meeting on August 16, he contends that he laid down to rest his back and accidentally fell asleep. (Tyr Decl., ECF 39-2 at 2; Crabtree Decl., ECF 40-1 at 29.) Aponte also acknowledges that he missed MHAAO training on August 30 and did not follow the call out procedures by seeking permission for the absence from Bessette. (Tyr Decl., ECF 39-2 at 2; Crabtree Decl., ECF 40-1 at 36 (email from Aponte to Bessette stating that

Page 11 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

he "100 percent messed up" in not letting Bessette know). Nevertheless, Aponte made up the training and Bessette acknowledged that there were extenuating circumstances and ensured that he was paid. (Pl.'s MSJ, ECF 42 at 222.) Also provided by Aponte is a letter from the MHAAO training instructor, Emily Nelson, who described that MHAAO policy permits three absences, provided that the training is made up, and that she encouraged Aponte to "take the day to support his son" who was "experiencing suicidal ideation during that time." (*Id.* at 183.)

BTC argues that it did not know Aponte remained employed with PHFS and that Aponte concealed that information during his brief, five-week employment. (BTC MSJ, ECF 37 at 7.) According to Tyr, it seemed likely that Aponte missed the August 16 telephone meeting with Bessette and was unresponsive for four hours because he fell asleep due to working for PHFS the night before. (Tyr Decl. ¶ 8, ECF 39.) Also contended by BTC is that it suspected Aponte missed work on September 21 due to working for PHFS the night before. (BTC Opp'n, ECF 47 at 4.) Even if BTC's termination decision was wrong, in BTC's view, Aponte has not presented any evidence that suggests its reasons were discriminatory. (*Id.* at 5.) The court disagrees.

What BTC understood about Aponte's continued employment with PHFS presents a genuine issue of material fact that precludes summary judgment for BTC here. Again, Aponte presents evidence that on September 20—the day before he called out due to back pain— Bessette positively evaluated Aponte's work. (Pl.'s MSJ, ECF 42 at 106-07.) If BTC knew that Aponte remained employed with PHFS, that fact calls into doubt BTC's primary rationale for his termination—that it just learned that Aponte had a second job that was interfering with his work for BTC. Taking Aponte's work for PHFS and that he was performing well, together with the temporal proximity of Aponte informing Bessette that he could not work due to extreme back

Page 12 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

pain on September 21, a reasonable jury could conclude that he was terminated based on his disability, and not because he had a second job. Viewing the evidence in the light most favorable to Aponte, those facts are sufficient to create an issue of fact about BTC's motives on his disability discrimination claim.[2] *Nunies*, 908 F.3d at 434-35; *see Kama*, 107 F.4th at 1059-60 (discussing that temporal proximity can support a showing of pretext if there is independent evidence of discrimination); *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011) (concluding that the temporal proximity of two days between protected activity and termination, plus the gravity of the complaints made, were sufficient to demonstrate pretext); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 870 (9th Cir. 1996) (concluding that letters contradicting employer's stated reason combined with one day proximity between complaint and termination demonstrated pretext to defeat summary judgment); *Melani v. Chipotle Servs., Inc.*, 3:17-cv-01177-AC, 2020 WL 362636, at *2 (D. Or. Jan. 21, 2020) (denying summary judgment in favor of employer because reasonable jury could infer that performance was improving, and that, but for absences due to IBS, employer would not have terminated employment).

\ \ \ \ \

\ \ \ \ \

---

[2]     Aponte also contends that he was treated differently than others without a disability, contending that Jones missed a meeting but was not fired. (Pl.'s Resp., ECF 46 at 23.) For support, Aponte relies on a single text exchange between Jones and Tyr in which Jones apologized for missing a leadership meeting, and Tyr responded with "no worries." (Pl.'s MSJ, ECF 42 at 203.) Not provided by Aponte, however, are any details or context about the meeting or evidence showing that Jones and Aponte are similarly situated such that the court could infer that he was treated differently because of his disability. Consequently, that text exchange fails to create a genuine issue of material fact on his disability discrimination claim. Nevertheless, because there are other issues of fact, summary judgment is inappropriate here.

Page 13 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

## 2.    Failure to Accommodate

The ADA "defines discrimination to include an employer's failure to make [a] reasonable accommodation." *Mendoza v. The Roman Catholic Archbishop of L.A.*, 824 F.3d 1148, 1150 (9th Cir. 2016) (citation modified). "[O]nce an employee requests an accommodation or an employer recognizes the employee needs an accommodation but the employee cannot request it because of a disability, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 391 (2002). Failing to provide a reasonable accommodation is "an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp*, 889 F.3d at 1095; 42 U.S.C. §§ 12112(b)(5)(A) (defining discrimination to include "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability"); *Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 798-99 (9th Cir. 2017) (explaining that the Ninth Circuit has "recognized that a failure-to-accommodate claim is analytically distinct from a claim of disparate treatment or impact under the ADA") (citation modified).

An employer's duty to engage in the interactive process generally arises with a request for accommodation by an employee. *See, e.g.*, *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001), *overruled in part on other grounds by Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013), *as recognized in Garcia v. Gateway Hotel L.P.*, 82 F.4th 750, 752 (9th Cir. 2023) (holding that FRCP 54(d)(1) governs the award of costs to a prevailing ADA defendant); *Vinson v.*

*Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). An employee need not use "particular language" to activate this duty, but he must "inform the employer of the need for an adjustment due to a medical condition." *Zivkovic*, 302 F.3d at 1089; *Barnett*, 228 F.3d at 1112 (employee need only provide notice in "plain English and need not mention the ADA or use the phrase reasonable accommodation" to trigger the duty to accommodate (citation modified)). Under Ninth Circuit law, there is an exception to the general rule that applies when the employer "(1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." *Brown*, 246 F.3d at 1188 (citing *Barnett,* 228 F.3d at 1112).

Reasonable accommodations permit an employee to perform the duties of the position. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). Examples of reasonable accommodations include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). To avoid summary judgment, an employee need only show that an accommodation "seems reasonable on its face." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006).

BTC argues that it is entitled to summary judgment here because it is undisputed that Aponte never requested any form of accommodation—and certainly not intermittent absences—before his September 22 termination. Because Aponte did not ask for an accommodation, in BTC's view, it had no duty to engage in the interactive process. BTC points to Aponte's deposition testimony, in which he admitted that on August 17, he informed Bessette that he did not "need anything." (Aponte Dep. 98:10–00:3, ECF 40-1 at 14-15.) Also asserted by BTC is

Page 15 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

that Aponte admitted that he did not reach out to Tyr or Jones, despite receiving an email from Bessette advising him to do so should he need reasonable accommodations. (Aponte Dep. 101:18–102:13, 131:6-11, ECF 40-1 at 17-18, 22, 31.) Because Aponte did not request an accommodation before September 21, BTC contends that it was not obligated to consider his absence that day as an accommodation request and nothing prevented BTC from considering that absence for disciplinary purposes. (BTC MSJ, ECF 37 (citing *Torres v. County of Berks*, 5:17-cv-01890, 2018 WL 564406, at *6 (E.D. Penn, Jan. 26, 2018) (explaining that "calling out sick cannot reasonably be construed as a request for an accommodation")); BTC Opp'n, ECF 47 at 4.) For all those reasons, BTC argues that it is entitled to summary judgment. The court disagrees.

Viewing the facts in the light most favorable to Aponte, the court concludes that there are genuine issues of fact that preclude summary judgment on Aponte's failure to accommodate claim. Bessette was aware of Aponte's back issues and encouraged him to inquire about accommodations with human resources previously. When Aponte experienced extreme back pain on September 21, he emailed Bessette *and* Jones the morning of September 21. As Aponte testified in his deposition, when asked by Bessette if he needed accommodations, he responded that he told Bessette he did not need accommodations "at this time." (Aponte Dep. 100:1-6, ECF 40-1 at 16.) Aponte further testified that Bessette said that she would relay his disability information to Jones and Tyr, who would follow up, but neither person did so. (Aponte Dep. 98:1-6, ECF 40-1 at 14.) Bessette encouraged Aponte to email Jordan Tyr to request accommodations. Although Aponte copied Jones on his September 21 email to Bessette, a reasonable jury could conclude that Aponte was attempting to reach out to BTC for

Page 16 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

accommodation. And because Aponte was terminated the next day, it is unknown whether Aponte would have produced a doctor's note for his absence or asked for leave due to his back issues. Although BTC suggests that Aponte missed work because he was working a second job at PHFS, Aponte contends that his back pain also prevented him from working at PHFS on September 20 and 21, relying on personnel records from PHFS. (Pl.'s MSJ, ECF 42 at 181 (showing Aponte used "PTO or paid sick time" on September 20 and 21).) Also provided by Aponte is a reasonable accommodation plan from PHFS that permits intermittent absences. (*Id.* at 186-88.)

BTC argues that its reasons for Aponte's termination need not be factually correct, that is, its mistaken belief that Aponte was working for PHFS the night before should not preclude summary judgment here. (BTC Opp'n, ECF 47 at 5.); *See Villiarimo*, 281 F.3d at 1063 ("Courts only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." (citation modified)). Even so, "[w]hen conflicting inferences may be drawn from the same facts, summary judgment is inappropriate." *See Melani*, 2020 WL 362636, at *2 (finding issues of fact on ADA claims precluded summary judgment for employer) (citing *Sankovich v. Life Ins.*, 638 F.2d 136, 140 (9th Cir. 1981)). Viewing the facts in Aponte's favor, the court concludes that a reasonable jury could conclude that BTC was aware of Aponte's disability, that he missed work due to that disability, and was attempting to let BTC know about his need for an accommodation. For all those reasons, BTC's motion for summary judgment on Aponte's failure to accommodate claim should be denied.

\ \ \ \ \

\ \ \ \ \

Page 17 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR

**B.** **_Aponte's Motion for Summary Judgment_**

In his cross-motion, Aponte contends that he is entitled to summary judgment on his disability discrimination claim and failure to accommodate claim. In light of the disputed factual issues discussed above, the court cannot determine as a matter of law that Aponte is entitled to judgment on those claims. Accordingly, the court recommends that Aponte's motion for summary judgment be denied.

In his briefing, Aponte also contends that he is entitled to judgment under ORS §§ 659A.109 and 659A.112. (Pl.'s MSJ, ECF 42 at 25.) Not so. Aponte's amended complaint does not identify state law claims, and BTC's liability is premised solely on the ADA and ADAAA. (Am. Compl., ECF 17 at 9 (identifying 42 U.S.C. § 12112).) Moreover, Aponte has not sought or obtained the court's permission to add state law claims; he may not amend his pleadings through briefing. Accordingly, those arguments are not well-taken. _See, e.g., Navajo Nation v. U.S. Forest Serv._, 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc) ("[R]aising [a new] claim in a summary judgment motion is insufficient to present the claim to the district court."), _overruled in part on other grounds by Apache Stronghold v. United States_, 101 F.4th 1036 (9th Cir. 2024))); _Wasco Prods., Inc. v. Southwall Techs., Inc._, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (citation omitted)).

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

Page 18 – FINDINGS AND RECOMMENDATION
_Aponte v. Bridges To Change_, Case No. 3:24-cv-00063-AR

**CONCLUSION**

For the above reasons, BTC's motion for summary judgment (ECF 37) should be DENIED, and Aponte's cross-motion for summary judgment (ECF 42) should be DENIED.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within 14 days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: July 21, 2026.

/s/ JEFF ARMISTEAD
JEFF ARMISTEAD
United States Magistrate Judge

Page 19 – FINDINGS AND RECOMMENDATION
*Aponte v. Bridges To Change,* Case No. 3:24-cv-00063-AR